IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| RACHEL EULA DRAKE, | ) |
| Plaintiff, | ) ) ) |
| | ) 3:16-CV-02234-JO |
| v. | ) ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) OPINION AND ORDER ) ) |
| Defendant. | ) |

JONES, J.,

Plaintiff Rachel Drake appeals the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

**PRIOR PROCEEDINGS**

Drake filed a previous claim alleging disability due to trochanteric bursitis, migraines, back strain, left shoulder pain, and left wrist pain. Admin R. 76. In a decision dated October 6, 2011, the Commissioner determined that Drake was not disabled up to and including that date. Admin. R. 68-80. In her present claim, Drake alleges disability due to the combined effects of fibromyalgia, migraines, arthritis in the wrist, tendinitis in the left shoulder, bursitis in the right hip, rapid heart rate, depression, and anxiety. Admin. R. 215. Drake's insured status under the Social Security Act expired on September 30, 2013. Admin. R. 11. She must establish that she became disabled on or

1 - OPINION AND ORDER

before that date to prevail on her claim. 42 U.S.C. § 423(a)(1)(A). *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). Accordingly, the relevant period for her present claim runs from October 6, 2011, through September 30, 2013.

The ALJ applied the five-step disability determination process described in 20 C.F.R. § 404.1520. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Admin. R. 14-21. The ALJ found that, during the relevant period, Drake's ability to perform basic work activities was limited by fibromyalgia, osteoarthritis of the left wrist, trochanteric bursitis, depressive disorder, and somatic symptom disorder. Admin. R. 14. He found that, despite these impairments, Drake retained the residual functional capacity ("RFC") to perform sedentary work with limited climbing, pushing and pulling, reaching, handling, fingering, and postural activities such as kneeling, crouching and so forth. The ALJ also found that Drake required certain environmental limitations and could only perform simple, routine, repetitive tasks consistent with unskilled work. Admin. R. 15-16.

The vocational expert ("VE") testified that a person with Drake's vocational factors and RFC could perform the activities required for a number of sedentary, entry level occupations, such as document preparer, telephone information clerk, and addressor clerk, which together represent over two hundred thousand jobs in the national economy. Admin. R. 20, 54-55, 63. The ALJ concluded that Drake had failed to show that she was disabled within the meaning of the Social Security Act during the period that is relevant for her claim. Admin. R. 21.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence may be less than a preponderance; it is such relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880 (9th Cir. 2006). The Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record, even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## ASSIGNMENTS OF ERROR

The plaintiff bears the burden of showing that the ALJ erred and that any error was harmful. *McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011). Drake contends the ALJ failed to properly identify her severe impairments, improperly determined that her impairments did not equal a presumptively disabling condition listed in the regulations, and failed to accurately assess her RFC by improperly discounting her subjective allegations, the opinion of John Benson, Psy.D., and the lay witness statement of Nancy Drake. Drake also challenges the VE's testimony.

## DISCUSSION

### I. Severity Requirement

Drake contends the ALJ failed to properly identify her severe impairments at step two of the disability determination process. Step two of the disability determination process is a *de minimus* severity requirement. For a claim to proceed beyond step two, a claimant must show that she has some impairment that has more than a minimal adverse impact on her ability to perform basic work activities. Here, the ALJ resolved step two in Drake's favor and continued to the remaining steps of the regulatory process. Accordingly, Drake has not alleged a harmful error at step two. *Buck v. Berryhill*, 869 F.3d 1040, 1048-1049 (9th Cir. 2017).

3 - OPINION AND ORDER

## II. Listing of Impairments

Step three of the disability determination process provides a presumption that a claimant is disabled if the claimant shows by medical evidence that his or her condition is equivalent to "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. The criteria for the presumptively disabling impairments appear in the regulatory "Listing of Impairments" at 20 C.F.R. Part 404, Subpart P, Appendix 1. The claimant must present medical findings equal in severity to all the criteria for the listed impairment that is most similar to the claimant's condition. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

During the administrative proceedings, Drake did not advance an argument or theory that her condition was equivalent to any in the regulatory Listing of Impairments. Based on the medical findings in the record, however, the ALJ considered the criteria for the listed impairments that he found most similar to Drake's condition. Based on medical findings of moderate to severe osteoarthritis of the left wrist, and trochantric bursitis of the right hip, the ALJ reasonably discussed the criteria for Listing 1.02, which covers major dysfunction of joints due to any cause. Admin. R. 14-15. Based on Drake's diagnoses of depressive disorder and somatic symptom disorder, the ALJ also discussed the criteria for Listing 12.04, which covers affective disorders, and Listing 12.07, which covers somatoform disorders. Admin. R. 15. The ALJ properly found that Drake failed to present medical findings equal in severity to all the criteria for those listed impairments. Admin. R. 14-15.

Drake does not challenge that finding, but contends the ALJ should have considered and discussed the criteria for Listing 14.09 which covers inflammatory arthritis. Drake's argument fails

4 - OPINION AND ORDER

because she did not advance a theory of equivalence or present evidence in an effort to establish equivalence to Listing 14.09. An ALJ cannot be required to explain why a claimant failed to establish equivalence to every set of criteria in the Listing of Impairments. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir.1990). The claimant must raise a plausible theory of how her combined impairments satisfy the criteria for a particular Listing and present evidence in a effort to establish equivalence. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). Drake cannot properly raise this issue on appeal because she failed to raise it either before the ALJ or before the Appeals Council. *Meanal v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).

### III.  Residual Functional Capacity

Drake contends the ALJ failed to assess her RFC accurately because he discounted her subjective symptoms, the opinion of Dr. Benson, and the lay witness statement of her mother. In addition, Drake contends the ALJ was bound by factual findings from the previous decision of October 6, 2011.

#### A.  Subjective Symptoms

Drake alleged that, during the relevant period between October 2011 and October 2013, she was experiencing a lot of pain and frequent migraines. She said her pain was so severe that she would become dehydrated from vomiting and have to be hospitalized. Drake said she experienced migraines at least once a week which left her bedridden for one or two days each time. In addition, she said that she had problems with balance and memory. She had episodes of gastroparesis that caused her to vomit. She had heart palpitations that caused chest pain and rapid heart rate that caused her to get light headed and dizzy. Admin. R. 16, 35-53.

5 - OPINION AND ORDER

The ALJ believed that Drake suffered symptoms from fibromyalgia, osteoarthritis in the wrist, bursitis in the hip, depression, and somatic symptom disorder that caused limitations in her ability to perform basic work activities. Admin. R. 14-16. He did not believe her allegations, however, to the extent she claimed she could not perform work with the limitations identified in his assessment of her RFC. Admin. R. 15-19.

When a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must evaluate the severity, persistence, and frequency of the subjective symptoms. The ALJ is not to engage in wide-ranging scrutiny of the claimant's character, but to focus on the intensity and persistence of her symptoms. *Treviso v. Berryhill*, 862 F.3d 987, 1000 n.5 (9th Cir. 2017); Social Security Ruling (SSR) 16-3p *available at* 2016 WL 1119029 (2016).

A determination that the claimant's symptoms are less debilitating than subjectively claimed must include specific findings supported by substantial evidence and a clear and convincing explanation of the ALJ's reasoning. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's statements. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In making findings about the severity of subjective symptoms, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements about her symptoms. *Tommasetti* at 1039; *Smolen*, 80 F3d at 1284.

The ALJ's decision demonstrates that he performed a thorough review of all the evidence relating to proper factors for evaluating the intensity, persistence and limiting effects of Drake's symptoms. He discussed the objective medical evidence and found it did not support the degree of limitation Drake alleged. The absence of medical evidence cannot be the sole basis for discrediting subjective symptoms, but remains a proper factor in assessing the severity, intensity, persistence, and limiting effects of subjective symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

In a January 2012 pain clinic evaluation, objective findings were generally normal, except that Drake discontinued straight leg raise and range of motion testing on her hip due to subjective pain. Dr. Grattan offered a differential diagnosis that included a hypersensitivity syndrome, peripheral neuropathy, somatization, and a number of other possibilities. Admin. R. 17, 377-378. A follow up nerve conduction study showed no nerve damage. Admin. R. 17, 380. In a June 2012 rheumatology evaluation, blood tests did not reveal markers for inflammatory arthropathy or other abnormalities, but Drake demonstrated tenderness on soft tissue palpation consistent with fibromyalgia. Admin. R. 313, 329. Diagnostic imaging studies were generally normal throughout, except at the left wrist where radiographs showed osteoarthritis and residuals from a past injury. Admin. R. 17, 322-323, 721-736. The ALJ could reasonably conclude that these limited objective findings did not fully explain the debilitating pain and extreme functional limitations Drake alleged.

The ALJ also considered Drake's treatment history which showed only conservative measures such as medications, injections, massage, and exercise. Such conservative treatment supports an adverse inference as to a claimant's credibility regarding her disability. *See Parra v.*

*Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Treatment records reflect that Drake reported improvement in her pain with treatment. The ALJ pointed out inconsistencies between the treatment records and Drake's subjective allegations. For instance, Drake alleged ongoing severe symptoms of gastroparesis, but the record shows this condition was controlled with medication and diet. Drake alleged chest pain and other symptoms related to rapid heart rate, but there is no record that she sought treatment for any such problems after August 2012. In addition, her allegations of weekly migraines are inconsistent with the few complaints of migraines until 2014, after her insured status expired. Similarly, Drake received conservative mental health treatment with counseling for situational stressors, but her level of functioning was mildly to moderately impaired. Admin. R. 17-18, 405, 415, 419, 436, 562, 582, 667-685, 894. Impairments that are largely controlled by treatment are not disabling and reports of improvement may undermine a claimant's allegation of ongoing symptoms. *Tommasetti*, 533 F3d at 1040; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ's evaluation of Drake's subjective symptoms is supported by inferences reasonably drawn from the record. The decision provides an adequate basis for the court to conclude that the ALJ did not discredit Drake's subjective statements arbitrarily. The ALJ provided a clear and convincing explanation that is supported by the record. *Tommasetti*, 533 F.3d at 1039; *Batson*, 359 F.3d at 1193; *Thomas*, 278 F3d at 958.

### B. Dr. Benson's Opinion

In January 2012, Drake sought treatment from Dr. Benson because she was experiencing a lot of anxiety and stress due to chronic pain, financial problems, and the poor health of her parents. At her evaluation, Dr. Benson diagnosed a pain disorder with psychological factors and adjustment

disorder. He proposed a treatment plan of cognitive behavior therapy sessions to promote mindfulness and for relaxation training. Admin. R. 682-685. In therapy sessions from February 2012 through the end of the relevant period in September 2013, Dr. Benson rated Drake's level of functioning as mildly to moderately impaired. In general, Dr. Benson's ratings of "moderately impaired" coincided with sessions in which Drake reported situational stressors, such as family conflicts, planning her brother's wedding, a hand injury, and dealing with an ailing grandmother. Admin. R. 19, 667- 679.

In March 2015, Dr. Benson completed a worksheet indicating that Drake had extreme limitations including poor ability to carry out short and simple instructions, maintain attention for two hour periods, sustain an ordinary routine, work in coordination with others and get along with coworkers, and complete an ordinary work schedule. Dr. Benson said Drake was unable to maintain regular attendance and would miss 10 to 15 days per month in a full time job. He said Drake could not respond appropriately to changes in routine and had poor ability to accept instructions and to make simple work-related decisions. Admin. R. 19, 898-900.

The ALJ gave Dr. Benson's opinion little weight in assessing Drake's RFC. Admin. R. 19. An ALJ may discount the opinion of a treating physician that is contradicted by another doctor's opinion by providing specific and legitimate reasons that are supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). An uncontradicted opinion may be rejected for clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Thomas*, 278 F3d at 956-57. The ALJ provided an adequate basis for his evaluation of Dr. Benson's opinion under either standard.

The ALJ correctly pointed out that the limitations in Dr. Benson's opinion were unsupported by his own treatment records showing only mild to moderate impairment. Nothing in Dr. Benson's findings suggest the limitations in his opinion and his treatment was limited to counseling sessions primarily dealing with situational stress. An ALJ need not accept a treating physician's opinion that is brief and conclusory in form with little in the way of clinical findings to support its conclusion. *Mangallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). In the absence of clinical findings, it is reasonable to infer that Dr. Benson premised his disability opinion on Drake's subjective report to him. Indeed, at her intake interview when they first met, Drake told Dr. Benson she was disabled. Admin. R. 684. Under these circumstances, the ALJ was justified in giving diminished weight to Dr. Benson's opinion.

### C. Lay Witness Statement

Drake contends the ALJ failed to give sufficient weight to a lay witness statement provided by her mother which was consistent with Drake's subjective symptoms. Admin. R. 246-255. She said that when Drake lifted more than five pounds, reached, twisted, or bent, she would be left bedridden for one to three days. Admin. R. 246. She said Drake could stand for no more than 15 minutes and walk less than 500 feet. She said Drake was forgetful, became distracted easily, and could pay attention for up to two hours depending on what she was doing. Admin. R. 18, 251.

The ALJ gave Ms. Drake's statement less than full weight. Admin. R. 18. An ALJ must consider the statements of a lay witness, and must give reasons germane to the witness in order to discount the statements. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). An ALJ need not clearly link the reasons to his determination that the lay witness testimony should be discounted, as long as she notes germane reasons somewhere in the decision and they are

supported by substantial evidence. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Further, when the statements of a lay witness are similar to the claimant's subjective complaints, then an ALJ's clear and convincing reasons for rejecting the claimant's testimony are considered to be germane to the lay witness. *Valentine*, 574 F.3d at 694.

Here the ALJ found that the records from Drake's treatment did not suggest she was confined to bed after minimal activity, that her memory was impaired, or that she had ongoing difficulties with medication side effects. In addition, the ALJ's reasons for giving diminished weight to Drake's subjective symptoms and Dr. Benson's opinion are equally germane to the statements of Drake's mother. Accordingly, I find no error in the evaluation of the lay witness evidence.

### D. The Previous ALJ's Factual Findings

The present ALJ properly found that Drake had shown changed circumstances since the previous decision by presenting evidence that she suffered from new impairments which adversely affected her ability to perform basic work activities. He found that the record of this case included new and material evidence that Drake's RFC had changed. Under these circumstances, an ALJ is not bound by a prior ALJ's factual findings about a claimant's RFC. *Chavez v. Bowen*, 844 F.3d 691, 693 (9th Cir. 1988); Acquiescence Ruling 97-4(9) (applying *Chavez* interpretation of administrative *res judicata* to agency's evaluation of disability cases within the Ninth Circuit). Accordingly, the ALJ did not err when he declined to adopt the RFC findings of the previous ALJ.

### IV. Vocational Evidence

At step five of the disability determination process, the Commissioner must show that there are a significant number of jobs in the national economy that a person with the claimant's vocational factors and RFC could perform. An ALJ can satisfy this burden by eliciting the testimony of a

vocational expert with hypothetical assumptions that accurately reflect the claimant's functional limitations. *Andrews v. Shalala*, 53 F.3d at 1043. Here, the VE testified that a person with Drake's vocational factors and RFC could perform sedentary, entry level occupations, such as document preparer, telephone information clerk, and addressor clerk, which together represent over two hundred thousand jobs in the national economy. Admin. R. 20, 54-55, 63.

Drake contends the ALJ erred by failing to resolve conflicts between the VE's testimony and the information about these occupations contained in the *Dictionary of Occupational Titles* ("DOT"), as required by SSR 00-4p. *See Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). In his RFC assessment and the hypothetical assumptions posed to the VE, the ALJ used the limitation "simple, routine, repetitive tasks consistent with unskilled work." Admin. R. 16, 56. The parties agree that the DOT indicates that a worker must be capable of Level 3 Reasoning to work as a document preparer or telephone information clerk. In the Ninth Circuit, a limitation to simple, routine, or repetitive tasks creates an apparent conflict with the demands of Level 3 Reasoning. *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). The Commissioner concedes that the ALJ erred by failing to resolve the apparent conflict in this case and relying on the VE's testimony regarding these two occupations.

There is no such apparent conflict regarding the third occupation identified by the VE, addressor clerk, which requires Reasoning Level 2. Drake contends the DOT information for the addressor clerk occupation indicates that a worker must be capable of frequent reaching, while the ALJ elicited the VE's testimony with a hypothetical limitation to occasional overhead reaching. I find that the ALJ obtained an adequate explanation from the VE to resolve the apparent conflict regarding the reaching limitation. Admin. R. 57-58.

The VE's testimony established that there were 40,000 jobs in the national economy within the occupation of addressor clerk. Admin. R. 63. The ALJ's determination that a significant number of jobs exist in the national economy that a person with Drake's RFC could perform, therefore, remains supported by substantial evidence. Accordingly, the conceded erroneous failure to resolve the apparent conflict regarding reasoning level was harmless. *See Carmickle*, 533 F.3d at 1162-1163 and n. 4 (error is harmless if the ALJ's determination remains supported by substantial evidence despite the error).

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this ____ day of March, 2018.

Robert E. Jones, Senior Judge
United States District Court